L. C. Frank, Appellant, v. J. E. Johnson et al., Appellees.

No. 40439.

June 20, 1931.

Devitt, Eichhorn & Devitt, for appellees.

David S. David, and McCoy & McCoy, for appellant.

Albert, J.—On the 1st day of February, 1920, J. E. Johnson executed and delivered to the defendant, Wm. Kilpatrick, a promissory note for $5,000.00. Later Kilpatrick transferred said note to the plaintiff and indorsed the same; and the plaintiff is now seeking to recover on this note against Kilpatrick on said indorsement.

On the face of the note appears the following memorandum:

"$5000.00
4.85 Protest

$5004.85
Protested for Non Payment
W. R. Springer, Notary Public."

Substituted pleadings were filed by both parties on October 29, 1929. The offered evidence in the case related to events in August 1920 when the note became due by its terms. As against Kilpatrick, the plaintiff pleaded a legal demand and protest of the note and notice of dishonor to the endorser. These allega-

tions were put in issue by defendant's general denial. This issue became decisive under the rulings of the district court. The questions presented to us are whether the offers of proof made by the plaintiff were sufficient to sustain the allegations of the petition in relation to protest and dishonor.

We have set forth above a memorandum appearing upon the face of the note referring to the protest thereof. The plaintiff was not able to produce any notarial certificate, nor any notarial record on the subject of protest and notice. His offers of proof in various forms were rejected and the alleged errors presented for our consideration are predicated upon such ruling.

The plaintiff testified to having purchased the note from his son on February 2, 1920. He testified also that prior to August 1, 1920, he sent the note through a certain bank to the Oskaloosa Savings Bank for the purpose of collection; and that the note was returned to him a few days later and certain notarial papers were attached thereto; that such papers had been lost and he was unable to produce them. The plaintiff offered to prove by himself the contents of the assumed notarial certificate, and such offer was refused. Other similar offers were made with other witnesses. Preliminary to a consideration of the questions presented, we set forth herein the various sections of our statute on the subject matter involved:

"9531. Presentment—instrument payable and not payable on demand. Where the instrument is not payable on demand, presentment must be made on the day it falls due. Where it is payable on demand, presentment must be made within a reasonable time after its issue, except that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof."

"9532. What constitutes a sufficient presentment. Presentment for payment, to be sufficient, must be made:

"1. By the holder, or by some person authorized to receive payment on his behalf.

"2. At a reasonable hour on a business day.

"3. At a proper place as herein defined.

"4. To the person primarily liable on the instrument, or if he is absent or inaccessible, to any person found at the place where the presentment is made."

"9533. Place of presentment. Presentment for payment is made at the proper place:

"1. Where a place of payment is specified in the instrument and it is there presented.

"2. Where no place of payment is specified and the address of the person to make payment is given in the instrument and it is there presented.

"3. Where no place of payment is specified and no address is given and the instrument is presented at the usual place of business or residence of the person to make payment.

"4. In any other case if presented to the person to make payment wherever he can be found, or if presented at his last known place of business or residence."

"9534. Instrument must be exhibited. The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

"9535. Presentment where instrument payable at bank. Where the instrument is payable at a bank, presentment for payment must be made during banking hours, unless the person to make payment has no funds there to meet it at any time during the day, in which case presentment at any hour before the bank is closed on that day is sufficient."

"9550. To whom notice of dishonor must be given. Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

"9552. Notice given by agent. Notice of dishonor may be given by an agent either in his own name or in the name of any party entitled to give notice, whether that party be his principal or not."

"9557. Form of notice. The notice may be in writing or merely oral and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment. It may in all cases be given by delivering it personally or through the mails."

"1208. Record to be kept. Every notary public is required to keep a true record of all notices given or sent by him, with

the time and manner in which the same were given or sent, and the names of all the parties to whom the same were given or sent, with a copy of the instrument in relation to which the notice is served, and of the notice itself.''

"11284. Notarial certificate of protest. The usual protest of a notary public, without proof of his signature or notarial seal, is prima facie evidence of what it recites concerning the dishonor, and notice thereof, of a bill of exchange or promissory note, and a copy from his record, properly certified by him, shall receive such faith and credit as it is entitled to by the law and custom of merchants.''

It will be noted from the foregoing that the protest of a negotiable note may be proven like any other fact, by any evidence, written or oral, admissible under common law rules. Such protest may also be proved, and more conveniently, by special statutory evidence consisting of the notarial certificate attested by the signature and seal of the notary. As an alternative to this latter method, the statute also provides for a certified copy of the notarial record duly attested by the notary.

I. The plaintiff did not produce herein any notarial certificate, nor certified copy of a notarial record. He attempted to prove by oral evidence, the alleged contents of a notarial certificate of protest, which was alleged to be lost. He offered to prove such contents first by the plaintiff and by his son, E. J. Frank, neither of whom had anything to do with or had any personal knowledge of, the alleged process of protest; and second by Springer, the notary whose signature appeared in the memorandum upon the face or margin of the note. This evidence was rejected by the court as inadmissible. The novel question is presented whether the contents of a purported notarial certificate, proved if at all by secondary evidence, will constitute the legal equivalent of the certificate itself or of the certified copy of the notarial record thereof. In 8 C. J. Section 1353 authority is cited to the following proposition:

"* * * the facts in a protest of a note cannot be proved by showing that a notarial certificate stating those facts has existed and has been lost, since the statute creates a species of evidence unknown to the common law; and where it cannot be produced, proof of the facts must be made in the usual manner.''

See Dutchess County Bank v. Ibbotson, 5 Den. (N. Y.) 110.

The question is one which could hardly arise in ordinary transactions of protest. An extraordinary feature of the case before us is that more than nine years had expired since the act of alleged protest before the date of proof arrived. In the meantime the Oskaloosa Savings Bank, of which the notary was assistant cashier, had gone out of business and had burned its records, including the notarial record, and the plaintiff claims to have lost the original notarial protest. Is it available to him to reconstruct the contents of the body of the notarial certificate and to dispense with sanction of the notarial certificate and seal? If so, by what authority?

The notarial protest with its recitals does not constitute a contract or obligation binding upon the parties as such. If it did, its contents would be provable by secondary evidence upon a proper showing of ground therefor. In the absence of the particular statute such notarial certificate would not be admissible. Under the statute such certificate is self-proving as to the signature and seal of the notary. It is accepted under the statute as prima facie evidence of the facts therein recited. Such facts may be supported or refuted by other evidence, either written or oral. Inasmuch as the admissibility of the certificate or certified copy rests solely upon statutory permission, we see no logical ground for saying that an *uncertified* copy may be introduced *without* sanction of statute. The solemnity of the instrument is provided by the notarial signature and seal made at the time of the protest. The solemnity of the certified copy is likewise provided. Behind these is the official record. These sanctions afford a large protection to the continuing integrity of the instrument. Its contents are thereby protected against mutilation by the imperfect memory of an honest witness or by the perjury of a dishonest one. Where signature and seal and record become lost, these sanctions are likewise lost. Seal and signature constitute the very essence of the instrument as a statutory instrument of evidence. The plaintiff still has his alternative to prove the *fact* of protest by other legal evidence. But the statute gives him no alternative to prove the *recitals* of the notarial certificate, other than the seal and signature of the notary. In the absence of these, the recitals do not become prima facie evidence. The existence of the notarial certificate

is not essential to the proof of protest. It is, however, a statutory method of convenience. If the certificate be lost, the convenience is lost. The fact of protest, if such, still remains and may be proved by other appropriate evidence. Such evidence, however, must be directed to proof of the *fact of protest* and not to the contents of the lost certificate. And such is the objective of all the evidence whether proved by certificate or proved orally. Such objective is not changed by the loss of the certificate. The burden still rests upon the plaintiff to prove the protest by other legal evidence. He is under no obligation to prove the contents of the lost certificate; nor does it avail him if he does prove the same. In the absence of notarial signature and seal the statute loses its application and leaves the plaintiff to his other sources of legal proof.

The court did not err in rejecting oral evidence of the contents of the alleged certificate *for the purpose of proving demand and refusal of payment.*

Whether such contents could be shown for the purpose of proving *notice of protest* is a different question and we have no occasion to consider it at this point. If it appeared that notice of protest to the endorser was given by delivering to him a duplicate certificate of protest, then there would be plausible reason for saying that the contents of such certificate, when lost, might be proved by secondary evidence. We do not now pass upon it.

II. The plaintiff attempted to prove the fact of due protest by the oral testimony of the notary, W. R. Springer, who is the notary who is alleged to have protested this instrument. Springer was the assistant cashier in the bank to which plaintiff sent this note for collection, and if the same was ever protested, it was by Springer, who was a notary public. By reference to the copy of the note heretofore set out it will be seen that on the face thereof there were some figures and the words "Protested for Nonpayment. W. R. Springer, Notary Public." This indorsement seems to have been written in red ink and Springer identifies the figures and writing as his handwriting and his signature. He was asked to state what he had done with reference to the protesting of the note. Objection was made that this question called for the opinion and conclusion of the witness, no evidence that the witness had any recollection

of the transaction, or knew what was done nine years before, and not the best evidence. He was then asked to give the form of the notice and the form of certificate he made at the time he says he protested the note for nonpayment. The same objection was made to this question. He was then asked if he could give the form of certificate that was made by him or the substance. A like objection was made to this question. All of these objections were sustained and the plaintiff excepted.

The plaintiff then offered to show by the witness, in response to the question, that he made the following certificate of protest to this note. A like objection was made and sustained. Defendant's counsel then, on permission of the court, asked the witness if he had any recollection at this time as to what he did with reference to this matter as a matter of his own knowledge and recollection at that time. The witness answered: "Only that it is my signature." "Q. That is all you know about it? A. Yes." The witness was then asked to refresh his recollection from his signature and of the "protest on the face of the note" and to state whether he had made a demand on Johnson for the payment of the note. Objection was made to the question and the same was sustained. The plaintiff then offered to show in response to this question that the witness would testify that he made a demand on J. E. Johnson on August 2, 1920. Objection was made to this offer and sustained. The witness was then asked: "Well, Mr. Springer, from refreshing your recollection from your signature and the protest can you tell what you did in protesting that note?" Objection was made to this question and sustained. Plaintiff then made the following entry "to show that in response to this question the witness can testify and would testify as to what he did when protesting this note was he made demand on J. E. Johnson, and that J. E. Johnson refused payment and same demand was made on the Peoples Trust & Savings Bank at which bank the note was payable and payment was refused, that he served and mailed to Wm. Kilpatrick on the 2d day of August, 1920, a notice of protest and failure to pay on said note by J. E. Johnson, that he mailed said notice in the postoffice at Oskaloosa, Iowa, in a stamped envelope addressed to Wm. Kilpatrick, Oskaloosa, Iowa. And that he also served notice of protest on the Peoples Trust & Savings Bank in the same manner and upon E. J. Frank and

the Iowa National Bank, and that same was done on the 2d day of August, 1920, the 1st of August being on Sunday.''

When this offer was made, the defendant objected that the evidence showed affirmatively that the witness was not competent to make the proof contained in the offer, witness having repeatedly testified that he had no recollection of what was done in this matter and could not so testify at this time. This objection was sustained.

We are of the opinion that the court erred. After having refreshed his recollection from the entries he made on the note, the witness could then testify that he did the things necessary to perfect a protest of this note so as to bind Wm. Kilpatrick, and he should have been permitted to so testify. The offer was that the witness ''would testify as to what he did when protesting this note'' etc. We feel that the court erred in refusing to permit the witness to give the testimony thus offered, and had such testimony been admitted supporting the offer it would have made a case for the jury; hence there was prejudicial error in rejecting it.—Reversed.

FAVILLE, C. J., and STEVENS, GRIMM, MORLING, and KINDIG, JJ., concur.

WAGNER and DE GRAFF took no part.